UNITED STATES of America, Appellee,

v.

Maria Enriqueta Cirila Trinidad DE JONGH, Defendant, Appellant.

No. 90–2060.

United States Court of Appeals, First Circuit.

Heard May 7, 1991.

Decided June 5, 1991.

Jeffrey M. Williams, Santurce, P.R., for defendant, appellant.

Ernesto Hernandez–Milan, Asst. U.S. Atty., Guaynabo, P.R., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., and Jeanette Mercado–Rios, Asst. U.S. Atty., San Juan, P.R., were on brief, for appellee.

Before SELYA and CYR Circuit Judges, and BOWNES, Senior Circuit Judge.

SELYA, Circuit Judge.

A Caribbean cruise having brought her to an undesired destination—a federal penitentiary—defendant-appellant Maria Enriqueta Cirila Trinidad De Jongh appeals her conviction on three counts of aiding and abetting violations of the drug-trafficking laws.[1] Finding her arguments to be unavailing, we affirm the judgment below.

---

1. The pertinent portions of the statutes of conviction read as follows:

    It shall be unlawful to import into the customs territory of the United States from any place outside thereof ... any controlled substance ... or any narcotic drug [with exceptions not germane to this case].

    **21 U.S.C. § 952(a) (1982 & Supp. V 1987).**

## I.

### Background

Appellant's assignments of error do not require that we treat the facts of her case in exegetic fashion. To give the flavor of what transpired, we summarize the critical events in traditional post-conviction fashion, taking the evidence in the light most flattering to the prosecution. *See United States v. Jimenez–Perez*, 869 F.2d 9, 10 (1st Cir.1989); *United States v. Mejia–Lozano*, 829 F.2d 268, 270 (1st Cir.1987).

On March 19, 1990, De Jongh and a traveling companion, Marilla Constancia Lodowieka Vlyt (Vlyt), a native of Bonaire, arrived in Puerto Rico from Curacao on board a cruise ship, the M/V VICTORIA. Their nervousness was obvious and they were subjected to closer-than-usual scrutiny. A customs inspector asked Vlyt to open the suitcase she was carrying. Vlyt had no key. Appellant furnished it, taking the key from her pocket. The inspector opened the suitcase and discovered just under twenty kilograms of cocaine (which, on later analysis, proved to be 72% pure). The contraband was not manifested on the vessel's official supply list. Both women were promptly arrested, charged, and indicted.

Prior to trial, Vlyt entered into a plea agreement and became the government's star witness. The burden of her testimony put appellant hip-deep in the narcotics venture. According to Vlyt, the cocaine was furnished by an acquaintance of appellant's; the women were to deliver it to a dealer in Puerto Rico; appellant maintained continuous custody of the key to the drug-laden suitcase (although Vlyt carried the valise because appellant had a weak back); and appellant told Vlyt that, if they were apprehended, it would be best to admit nothing.

Based on this, and other evidence, the jury found the appellant guilty on all three counts. On appeal, she floats four assignments of error. None have any enduring buoyancy. We briefly discuss three claimed bevues.[2]

## II.

### The Witness Interview

Vlyt, who was fluent only in Papamiento, testified with an interpreter's assistance. She concluded her direct examination on Friday, June 22, 1990. Cross-examination began the following Monday. Early in the cross, it was revealed that Vlyt and the prosecutor had met privately, albeit briefly, on Monday morning, before Vlyt took the witness stand to undergo questioning by the defense. The idea for the conference presumably originated with the prosecutor, although Vlyt testified that, over the weekend, she had recalled "some more things" anent the smuggle.

At the time, the admission engendered no particular controversy. That afternoon, however, defense counsel asked to be heard outside the jury's presence. He then argued that the meeting was improper and prejudicial, stressing that Vlyt had already varied her story once.[3] He requested that

... [I]t shall be unlawful for any person knowingly or intentionally —
　(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ....
**21 U.S.C. § 841(a)(1) (1982 & Supp. V 1987).**
It shall be unlawful for any person to bring or possess on board any vessel ... arriving in or departing from the United States ... a controlled substance ... unless such substance or drug is a part of the cargo entered in the manifest ... of the ... vessel....
**21 U.S.C. § 955 (1982 & Supp. V 1987).**
Whoever commits an offense against the United States or aids, abets, ... or procures its commission, is punishable as a principal.
**18 U.S.C. § 2(a) (1988).**

2. The remaining assignment of error challenged the district court's denial of appellant's motion for judgment of acquittal under Fed.R.Crim.P. 29. At oral argument before us, appellant's counsel conceded that, if Vlyt's testimony was properly before the jury, then the evidence of appellant's guilt passed Rule 29 muster. Because we conclude that appellant's motion to strike Vlyt's testimony was appropriately denied, see *infra* Part II, we need not pursue appellant's sufficiency challenge.

3. When arrested, Vlyt told the authorities that the defendant knew nothing about the drugs; after pleading guilty, Vlyt's version of the events changed considerably.

Vlyt's testimony be stricken or, alternatively, that a mistrial be declared. The court denied the motion.

■ We discern no error. To be sure, the district court possesses considerable discretion to make prophylactic orders designed to curb possible trial abuses, "includ[ing] broad power to sequester witnesses before, during, and after their testimony." *Geders v. United States,* 425 U.S. 80, 87, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976); *see also* Fed.R.Evid. 615. But here, the defendant had not requested that witnesses be sequestered or that any special prophylaxis be employed. Similarly, the court, on its own initiative, had entered no protective orders. We are aware of no rule or ethical principle suggesting, in the absence of a court order, that a prosecutor should refrain from conferring with a government witness before the start of cross-examination. As appellant's counsel admits, a prosecutor—or any other lawyer, for that matter—would be foolhardy to call an important witness without attempting, first, to debrief the witness; and we see no greater or different risk of taint in an interview at the end of the direct.[4] There was no sufficient reason to strike Vlyt's testimony. *See, e.g., United States v. Rossetti,* 768 F.2d 12, 16 (1st Cir.1985) (where no sequestration order was in place, there was no error in district court's refusal to strike testimony of key government witness who met privately with government investigator during trial in respect to apparent inconsistencies between the witness' anticipated testimony and testimony already given by other witnesses).

■ Nor can the appellant profitably attack the district judge's refusal to declare a mistrial on this basis. We have regularly held that motions for mistrial are "directed primarily to the sound discretion of the trial court." *Real v. Hogan,* 828 F.2d 58, 61 (1st Cir.1987); *accord United States v. Chamorro,* 687 F.2d 1, 6 (1st Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 613 (1982); *United States v. Pap-* pas, 611 F.2d 399, 406 (1st Cir.1979). We cannot fault the court's exercise of its discretion in this situation. Vlyt and the prosecutor conferred not in some shadowed corner, but in a witness room at the courthouse. When asked about meetings generally, Vlyt readily volunteered the facts about the mid-trial meeting. She offered a perfectly plausible explanation for the session—an explanation which has not seriously been called into question. She was aggressively cross-examined about the incident.

In short, the defense, the court, and the jury were fully informed of the meeting and its circumstances in ample time to assess their effect, if any, on Vlyt's credibility. The appellant has not shown any actual prejudice. In these circumstances, even the breach of a true sequestration order would not demand that a mistrial be declared. *See, e.g., United States v. Ayres,* 725 F.2d 806, 812 (1st Cir.) (no mistrial necessary following inadvertent breach of actual sequestration order), *cert. denied,* 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984); *see also United States v. Kindle,* 925 F.2d 272, 276 (8th Cir.1991) (mistrial not required when appellant suffered no prejudice from challenged contacts between sequestered witnesses and federal agents); *United States v. Arruda,* 715 F.2d 671, 684 (1st Cir.1983) (where sequestration order breached, district court had discretion to allow the witness' testimony to stand and to refuse a mistrial). In the absence of some judicial directive limiting contact with the witness, it verges on the frivolous to assert that the court erred in denying appellant's mistrial motion.

## III.

### The Good Conduct Certificate

Appellant contends that the district court committed reversible error when it refused to allow into evidence a good conduct certificate ostensibly issued by the government of Bonaire, a copy of which is an-

---

**4.** A careful lawyer, we think, might well want to confer with a witness at the end of direct examination for a number of legitimate purposes, say, as this case aptly illustrates, to make certain that relevant facts within the witness' knowledge were not inadvertently omitted.

nexed as an appendix to this opinion.[5] We disagree.

As the court below recognized, the admissibility of the certificate depended, first, on Fed.R.Evid. 902(3).[6] In this case, it is pellucidly clear that the rule's conditions for self-authentication were not satisfied. Although the certificate was purportedly signed by a Lieutenant Governor of Bonaire, the signature was in fact illegible; the exhibit was devoid of the final certification contemplated by Rule 902(3); and the consular official called as a witness could not verify it. Where a rule prescribes specific conditions for authenticating a public document, and the document's proponent fails to comply with the specified conditions, the proffer should ordinarily be rejected. *See, e.g., Chung Young Chew v. Boyd,* 309 F.2d 857, 866–67 (9th Cir.1962) (discussing Fed.R.Civ.P. 44(a)(2) ).

In an effort to avoid the seeming inevitability of exclusion, appellant claims that, in this instance, the court should have relaxed the strictures of the rule. Evidence Rule 902(3) by its terms contemplates that noncompliance may be excused in certain circumstances, and shines two beacons by which trial judges can steer, stating that:

> If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.

Fed.R.Evid. 902(3). In this case, the certificate's existence was not revealed to the prosecution until the start of the defendant's case and defendant offered it into evidence on the same day. There was no "reasonable opportunity" for investigation. Hence, the exception to Rule 902(3) did not apply.

By the same token, the record reflects no "good cause" for the lack of a final certification. Because the language of the Rule 902(3) exception was appropriated directly from Fed.R.Civ.P. 44(a)(2), *see* Fed.R.Evid. 902 advisory committee note, we are obliged to read the two rules *in pari passu.* The notes accompanying Civil Rule 44 inform the use of the good cause exception:

> [I]t is recognized that in some situations it may be difficult or even impossible to satisfy the basic requirements of the rule. There may be no United States consul in a particular foreign country; the foreign officials may not cooperate; peculiarities may exist or arise hereafter in the law or practice of a foreign country. Therefore the final sentence of [the rule] provides the court with discretion to admit an attested copy of a record without a final certification, or an attested summary of a record without a final certification. *This relaxation should be permitted only when it is shown that the party has been unable to satisfy the basic requirements of the ... rule despite [her] reasonable efforts.*

Fed.R.Civ.P. 44 advisory committee note (emphasis supplied; citations omitted). The burden of showing good cause, of course, rests with the proponent of the document. Below, the burden was ignored; the appellant suggested no circumstances approximating the situations envisioned by the advisory committee.

---

5. According to a defense witness, a Dutch citizen who does not have a significant criminal record may, upon request, secure from the government what the witness described as "a good conduct certificate," properly known as a "Certificate Regarding Conduct."

6. The rule provides in relevant part that extrinsic evidence of authenticity is not required as a condition precedent to admissibility with respect to a foreign public document "purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, *and accompanied by a final certification as to the genuineness of the signature and official position* (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation." Fed.R.Evid. 902(3) (emphasis supplied). The rule also describes who may make the "final certification."

Moreover, although "good cause" has a protean quality and its ascertainment will likely vary from case to case, we do not believe that the "reasonable opportunity" and "good cause" components of Rule 902(3) are scissile in all respects. Where the adversary, despite a fair chance to examine into the document's bona fides, casts no serious doubt on its authenticity, a finding of good cause can much more readily eventuate. *See Black Sea & Baltic Gen. Ins. Co. v. S.S. Hellenic Destiny,* 575 F.Supp. 685, 692 (S.D.N.Y.1983); 5 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 902(3)[01] at 902–17 (1990). But when, as in this case, the document surfaces at the eleventh hour, the dispute about its authenticity does not appear to be frivolous, and the proponent has no compelling explanation for either the lateness of the proffer or the lack of the requisite formalities, a reviewing court would be hard pressed to say that the trial judge erred in refusing to find good cause under Rule 902(3). We cannot do so here. *See Real,* 828 F.2d at 64 (in federal court, "[t]rial judges have wide discretion in deciding whether an adequate foundation has been laid for the admission of evidence").[7]

## IV.

### *Sentencing*

■ Appellant's final sally is an attempt to undermine the fifteen-year sentence which she received pursuant to the federal sentencing guidelines. *See generally United States v. Diaz–Villafane,* 874 F.2d 43, 47–48 (1st Cir.) (explaining methodology for calculating guidelines range), *cert. denied,* — U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). Her particular complaint is that the district court refused to grant her a two-level reduction for accept-ance of responsibility. *See* U.S.S.G. § 3E1.1(a) (providing for such a reduction where "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for h[er] criminal conduct").

De Jongh's argument is, in its terms, a paradox. She does not contend that she actually accepted responsibility. The opposite is true. She *denied* responsibility and continues to do so, maintaining that she is innocent of the charges lodged against her. Her hypothesis is more convoluted. She asseverates that where, as in her case, "the defendant claims to be innocent, even after trial, ... § 3E1.1 unconstitutionally coerces her into waiving her right not to self-incriminate herself and thus relinquish her right to assert her innocence on appeal." The hypothesis is quickly disproved by the caselaw.

In *United States v. Paz Uribe,* 891 F.2d 396 (1st Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990), we rejected precisely the same argument predicated on a materially equivalent set of facts. We held unequivocally that, notwithstanding the defendant's perceived dilemma, U.S.S.G. § 3E1.1, as applied to a defendant who continued to maintain his innocence after having been found guilty at trial, was "not an impermissible burden on the exercise of constitutional rights." *Id.* at 400. Moreover, *Paz Uribe* is no waif in the wilderness; it stands shoulder to shoulder with substantial authority from our sister circuits to the same effect. *See, e.g., United States v. Skillman,* 922 F.2d 1370, 1378–79 (9th Cir.1990); *United States v. Tillem,* 906 F.2d 814, 828 (2d Cir.1990); *United States v. Gonzalez,* 897 F.2d 1018, 1019–21 (9th Cir.1990); *United States v.*

---

**7.** We add an eschatocol of sorts. Meeting the test of Evidence Rule 902 does not automatically ensure admissibility. Even an authentic document must satisfy other applicable criteria for admissibility. *See United States v. Southard,* 700 F.2d 1, 23 (1st Cir.) (self-authentication and admissibility "are two separate matters"), *cert. denied,* 464 U.S. 823, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). In this instance, given relevancy and hearsay concerns, it is problematic whether a duly authenticated certificate would have been admissible. *See, e.g., Government of the Virgin Islands v. Grant,* 775 F.2d 508, 510–13 (3d Cir. 1985) (holding that testimony as to an absence of prior arrests is inadmissible as character evidence and may also be excluded, in the trial court's discretion, if offered as background evidence); *see also United States v. Nazzaro,* 889 F.2d 1158, 1168 (1st Cir.1989) (police officer's military service commendations and medal for valor excludable both on relevancy grounds and as "classic hearsay").

*Young,* 875 F.2d 1357, 1360–61 (8th Cir. 1989).[8]

To wax longiloquent would serve no useful purpose. We find Judge Coffin's reasoning in *Paz Uribe,* 891 F.2d at 399–400, to be impeccable; we are bound by it in any event, *see United States v. Reveron Martinez,* 836 F.2d 684, 687 & n. 2 (1st Cir. 1988) (in a multi-panel circuit, newly constituted panels should normally consider themselves bound by prior panel decisions closely in point); and we decline to write for writing's sake. Under *Paz Uribe,* appellant's facial challenge to the constitutionality of U.S.S.G. § 3E1.1(a) must be rejected. Thus, withholding the acceptance-of-responsibility credit in the circumstances of this case was a proper and lawful exercise of the district court's powers.

## V.

### Conclusion

We need go no further. Our examination of the record persuades us that the defendant was fairly tried, justly convicted, and appropriately sentenced. Because the claimed errors were not errors at all, the defendant's appeal founders.

*Affirmed.*

---

8. A more difficult problem may exist in a case where a defendant, after pleading or being found guilty at trial, attempts to accept responsibility and the district court purports to weigh against this acceptance the defendant's earlier, constitutionally protected conduct, such as her exercise of her right to remain silent or to put the government to its proof at trial. *See United States v. Watt,* 910 F.2d 587, 591–93 (9th Cir. 1990). The instant case presents no such dilemma and we take no view of how it may best be resolved.

APPENDIX

Exempt from stamp duties in accordance
with article 32 of the "Government Or-
dinance on the judicial documentation
and on the certificates regarding con-
duct" (Publication sheet 1968 no. 213)

C E R T I F I C A T E  R E G A R D I N G  C O N D U C T

The Lt. Governor of the insular territory of Bonaire

H a v i n g  r e g a r d  t o:

the regulations of the "Government Ordinance on the judicial
documentation and on the certificate regarding conduct" (Pu-
blication sheet 1968 no.213);

C e r t i f i e s :

that from the examination with regard to the conduct of ......

........DE JONGH, geboren TRINIDAD, Maria, Enriqueta Cirila..........

born ...Curacao,.28.oktober.1955.................(place and date)

who ..is registered... in the registers of population of

the island of B o n ai r e, in view of the purpose for

which the certificate has been requested, there was no evidence

of objections to the above-mentioned person.

This certificate is issued in connection with .trial.procedure.

.in Puerto.Rico.........................................................

The Lt.Governor,
G.A. SOLIANA.

Kralendijk, augustus, 17  19 90.