# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 25, 2009
NOT TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

## 2007-SC-000146-MR

DATE 7/16/09 Kelly Klaber D.C.

WILLIAM CAMPBELL                                    APPELLANT


ON APPEAL FROM KENTON CIRCUIT COURT
V.         HONORABLE PHILIP D. OVERSTREET, SPECIAL JUDGE
NO. 05-CR-00496


COMMONWEALTH OF KENTUCKY                            APPELLEE


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART AND REVERSING IN PART

Appellant, William Campbell, was convicted by a Kenton County jury of twenty (20) counts of sodomy in the first degree (under age 12), two (2) counts of use of a minor in a sexual performance, criminal abuse in the first degree, rape in the second degree, and sodomy in the first degree (forcible compulsion). The jury recommended, and the trial court imposed, a sentence of fifty (50) years for the sodomy convictions, twenty (20) years for the use of a minor in a sexual performance convictions, ten (10) years for the criminal abuse conviction, ten (10) years for the rape in the second degree (forcible compulsion) conviction, and twenty (20) years for the sodomy in the first degree conviction, all to be served concurrently. This appeal followed.

## Facts

Appellant lived with his wife, Karen, and their five (5) children, A.L.C.,[1] J.C.,[2] A.C.,[3] W.C., and B.C., at various addresses in Ohio and Kentucky, including the house where most of the abuse occurred, 37 Euclid Ave., in Ludlow, Kentucky. The family had been investigated for years by social services for the neglect of their children, resulting in twenty (20) social service reports in Kentucky and twelve (12) in Ohio. The reports dealt primarily with an extreme lack of cleanliness in the home, and the medical neglect of A.L.C., Appellant's developmentally-delayed daughter, who suffered from a seizure disorder. As a result, the children were temporarily removed from the home on three (3) separate occasions.

Allegations of sexual abuse began in the fall of 2004, upon A.L.C.'s pregnancy. She gave birth on December 22, 2004. Suspected fathers ranged from A.L.C.'s classmates at school, to Appellant, Appellant's brother, Stephen Campbell, and Appellant's son, A.C. DNA testing was performed on Appellant, and A.C. The testing confirmed that A.C. was the father. During the investigations surrounding A.L.C.'s pregnancy, both A.C. and J.C. alleged that Appellant had sexually abused them and A.L.C. Appellant was eventually charged and convicted of the multiple counts aforementioned.

---

[1] A.L.C. was twelve (12) or thirteen (13) during the abuse on Euclid Ave. and twenty-one (21) or twenty-two (22) at trial.

[2] J.C. was ten (10) and eleven (11) during the abuse on Euclid Ave. and nineteen (19) at trial.

[3] A.C. was six (6) when the abuse started, ten (10) during the abuse on Euclid Ave., and fifteen (15) during the conduct which served as the basis for the use of a minor in a sexual performance charge.

2

Prior to trial, Appellant worked out a plea bargain with the Commonwealth. With the consent of the victims, Appellant agreed to plead guilty to two (2) counts of sodomy in the second degree in exchange for the dismissal of the other charges and a recommendation for five (5) to ten (10) years on each charge, with the parties being able to argue the penalty at sentencing. Thereafter, Appellant attempted to enter an <u>Alford</u> plea, but the trial court refused to accept the plea because of a perceived conflict with entry into the Sexual Offender Treatment Program (SOTP) after incarceration. The matter then went to trial.

At trial, J.C. was the first complaining witness to take the stand. Appellant was charged with anally sodomizing J.C. sometime during the period of January 1, 1997 through December 31, 1998. However, when a visibly distraught J.C. testified on the late afternoon of October 16, 2006, he testified that Appellant merely touched his lower abdomen while he was wearing nothing but underwear. As J.C.'s direct examination occurred late in the day and because J.C. was so distraught, the trial court recessed for the day.

During the overnight recess, the prosecution was permitted to confer with J.C. The next morning, J.C. testified that Appellant pulled his underwear off, turned him over, and stuck his penis into his "butt." A.C. later testified that he witnessed Appellant anally sodomizing J.C. but did not interrupt because he was afraid he would be "forced to do something."

J.C. also testified that he once saw Appellant sitting in a chair watching A.C. and A.L.C. having sex in his sister's bedroom. Lastly, J.C. testified that Appellant would make him stand in the corner against the wall for long periods

3

of time, to the point where his knees would buckle, and his body would leave oil stains on the wall.

A.C. testified after J.C. He testified that, while the family lived in Ludlow, Appellant repeatedly forced him to have both oral and anal sex. A.C. said that Appellant would hold him down and put his penis into A.C.'s mouth, while A.C. would try and fight him off. In addition, A.C. claimed Appellant would push him down on the floor, hold him down, and anally penetrate him. A.C. alleged the acts of oral sex occurred approximately twelve (12) - fifteen (15) times and the alleged anal sex occurred approximately twelve (12) – twenty (20) times. Lastly, A.C. also testified as to the occurrence of group sexual activity with A.L.C., Appellant, and Stephen Campbell, Appellant's brother.

Detective Brian Frodge of the Covington Police Department testified that he spoke with Appellant on two (2) separate occasions in 2005 regarding the sexual abuse allegations. In their first interview, Detective Frodge testified that Appellant denied all the allegations of sexual abuse. In the second interview, however, Appellant stated that he had no conscious memory of sexually abusing his children, but that if he did do it, he did not remember it. Appellant then told Det. Frodge that if he did it, he must have mistaken his son, J.C., for his wife.

The jury found Appellant guilty of twenty-one (21) counts of sodomy in the first-degree (under age 12), two (2) counts of use of a minor in a sexual performance, criminal abuse in the first-degree, rape in the second-degree, and sodomy in the first-degree (forcible compulsion). Appellant was convicted and sentenced as aforementioned.

4

Appellant now argues the trial court erred by 1) denying his motion for directed verdict on multiple counts of sodomy in the first-degree pertaining to A.C.; 2) using twenty (20) duplicate jury instructions VI through XXV – which correspond to Counts 2 through 21 of the indictment - without identifying separate and distinct incidents of sodomy in the first degree pertaining to A.C.; 3) recessing trial to allow the Commonwealth to confer overnight with a key prosecution witness during his direct testimony; and 4) refusing to accept Appellant's Alford plea.

For reasons set out below, we find the trial court erred in using identical instructions.

## I. Appropriateness of Multiple Sodomy Counts

Appellant first argues that there was insufficient evidence to convict him of twenty (20) counts of sodomy in the first-degree involving A.C. (Counts 2 through 21 of the indictment). He also makes a related claim that he was denied a unanimous verdict because the language of Instructions VI through XXV (corresponding to Counts 2 through 21 of the indictment) was identical and contained no differentiating factors separating each instance of sodomy. Because these arguments overlap, we will address them together. See Miller v. Commonwealth, 77 S.W.3d 566, 576 (Ky. 2002).

We note that "[t]he proper procedure for challenging the sufficiency of evidence on one specific count is an objection to the giving of an instruction on that charge." Seay v. Commonwealth, 609 S.W.2d 128, 130 (Ky. 1980).

> [T]hat rule applies only when there are two or more charges and the evidence is sufficient to support one or more, but not all, of the charges. In that event, the allegation of error can only be preserved

5

by objecting to the instruction on the charge that is claimed to be insufficiently supported by the evidence.

Combs v. Commonwealth, 198 S.W.3d 574, 578-579 (Ky. 2006); see also Miller, 77 S.W.3d at 577, Campbell v. Commonwealth, 564 S.W.2d 528, 530-31 (Ky.1978); Kimbrough v. Commonwealth, 550 S.W.2d 525, 529 (Ky.1977).

Here, Appellant made only a general motion for directed verdict at the end of the Commonwealth's case-in-chief, then renewed his motion at the end of the presentation of the Commonwealth's rebuttal evidence, specifically stating the motion was being renewed on the same grounds previously argued to the court. Thus, pursuant to our holdings in Pate v. Commonwealth, 134 S.W.3d 593, 597-598 (Ky. 2004) and Gibbs v. Commonwealth, 208 S.W.3d 848, 857 (Ky. 2006), Appellant's general motion for directed verdict did not properly preserve this issue for appeal. Therefore, Appellant requests palpable error review pursuant to RCr 10.26.

Under RCr 10.26, an unpreserved error may be reviewed on appeal if the error is "palpable" and "affects the substantial rights of a party." Even then, relief is appropriate only "upon a determination that manifest injustice has resulted from the error." Id. An error is "palpable," only if it is clear or plain under current law. Brewer v. Commonwealth, 206 S.W.3d 343 (Ky. 2006). Generally, a palpable error "affects the substantial rights of a party" only if "it is more likely than ordinary error to have affected the judgment." Ernst v. Commonwealth, 160 S.W.3d 744, 762 (Ky. 2005). We note that an unpreserved error that is both palpable and prejudicial, still does not justify relief unless the reviewing court further determines that it has resulted in a

6

manifest injustice; in other words, unless the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable." Martin v. Commonwealth, 207 S.W.3d 1, 4 (Ky. 2006).

In this regard, "[i]t is [] elementary that the burden is on the government in a criminal case to prove every element of the charged offense beyond a reasonable doubt and that the failure to do so is an error of Constitutional magnitude." Miller, 77 S.W.3d at 576. Plainly, a defendant cannot be convicted of a criminal offense except by a unanimous verdict. Ky. Const. § 7; Cannon v. Commonwealth, 291 Ky. 50, 163 S.W.2d 15 (1942); RCr 9.82(1). Therefore, we have held that:

> [w]hether the issue is viewed as one of insufficient evidence, or double jeopardy, or denial of a unanimous verdict, when multiple offenses are charged in a single indictment, the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense.

Miller, 77 S.W.3d at 576.

Prior to our recent decision in Harp v. Commonwealth, 266 S.W.3d 813 (Ky. 2008), it was possible for an instructional error such as this to be "cured" by the Commonwealth's introduction into evidence and explanation during closing argument of the identifying characteristics from which the jury could determine the existence of facts proving each of the offenses, rendering any error in the instructions harmless. See Bell v. Commonwealth, 245 S.W.3d 738, 744 (Ky. 2008) ("The Commonwealth, in its closing, identified the five distinct incidents."). However, in Harp, we held that "arguments of counsel are

7

not [now] sufficient to rehabilitate otherwise erroneous or imprecise jury instructions" because the arguments of counsel are not evidence. 266 S.W.3d at 820 (citing Dixon v. Commonwealth, 263 S.W.3d 583, 592-593 (Ky. 2008)). Harp further reaffirmed the proposition that:

> a party claiming that an erroneous jury instruction, or an erroneous failure to give a necessary jury instruction [is harmless error], bears a steep burden because we have held that "[i]n this jurisdiction it is a rule of longstanding and frequent repetition that erroneous instructions to the jury are presumed to be prejudicial; [thus,] an appellee claiming harmless error bears the burden of showing affirmatively that no prejudice resulted from the error."

266 S.W.3d at 818.

Thus, it is now settled that a trial court errs in a case involving multiple identical charges if its instructions to the jury fail to factually differentiate between the separate offenses according to the evidence. Combs, 198 S.W.3d at 580 ("The error here was the failure to factually differentiate between the separate offenses."). Because the trial court used identical jury instructions on twenty (20) counts of first degree sodomy, none of which could be distinguished from the others as to what factually distinct crime each applied to, Appellant was presumptively prejudiced. Nor has the Commonwealth met its burden to show affirmatively that "no prejudice resulted from the error." Harp, 266 S.W.3d at 818.

> [I]t must be evident and clear from the instructions and verdict form that the jury agreed, not only that [Appellant] committed one count of sodomy, but also exactly which incident they all believed occurred [and voted for]. Otherwise, [Appellant] is not only denied a unanimous verdict, but is also stripped of any realistic basis for appellate review of his conviction for sodomy. In other words, without knowing which instance of sodomy is the basis of his conviction, [Appellant] cannot rationally challenge the sufficiency of the evidence on appeal.

8

Bell, 245 S.W.3d at 744.

Being error, we now hold instructional error, such as this, to be palpable error. Id. ("[T]he instructional error explained above . . . constituted palpable, reversible error."); cf. Commonwealth v. Davidson, --- S.W.3d ----, 2009 WL 424931 *1, *3 (Ky. February 19, 2009). Yet, that is not to say that every error in jury instructions rises to the level of palpable error.

As this Court noted in Nichols v. Commonwealth, 142 S.W.3d 683, 691 (Ky. 2004), an alleged error is not reviewable under RCr 10.26 unless (1) it is "[a] palpable error," and (2) "a determination is made that manifest injustice [has] resulted from the error." By definition, the word "palpable" means "[e]asily perceived; obvious." Id. (quoting American Heritage Dictionary of the English Language 946 (4th ed. 2000)). Thus, a "palpable error" is an error that is easily perceived or obvious. Id. In Brock v. Commonwealth, 947 S.W.2d 24, 28 (Ky. 1997), this Court "interpreted the requirement of 'manifest injustice' as used in RCr 10.26 . . . to mean that the error must have prejudiced the substantial rights of the defendant, i.e., a substantial possibility exists that the result of the trial would have been different." (internal citation omitted)

Here, it is obvious that the identical jury instructions used in this case patently failed to adequately differentiate the alleged instances of multiple sodomy. Therefore, the error was palpable. Further, as the trial court's error "prejudiced the substantial rights of the defendant," the use of identical jury instructions resulted in manifest injustice, potentially depriving Appellant of his right to a unanimous verdict and to challenge the sufficiency of the

9

evidence on appeal. Id. Thus, we reverse Appellant's twenty (20) convictions for sodomy in the first degree and remand for a new trial consistent with this opinion.

Having found cause for reversal, we will consider such other issues as may call for dismissal, or are capable of repetition.

## II. Overnight recess

Appellant next argues the trial court committed reversible error when it recessed for the night and allowed the Commonwealth to speak to J.C. about his ability to continue with his testimony.

Toward the end of the first day of trial, around 4:00 p.m., the Commonwealth asked J.C. about the sexual abuse he received at his father's hands. J.C. was obviously distraught, emotionally upset, and "on the verge of an emotional breakdown." He testified that Appellant just touched his lower abdomen while he was wearing nothing but underwear, testimony which was inconsistent with his many previous statements. The prosecutor then attempted to elicit testimony regarding the additional sexual acts J.C. had told the officer about, but got no response. Noting his multiple statements to the contrary, she then requested a bench conference to find out if J.C. was going to "stick with" his current story denying Appellant's sexual wrongdoing.

Appellant then objected, arguing that questioning J.C. during the course of his testimony outside of the presence of the court was improper. After discussions and given the lateness of the hour –nearly 5:00 p.m. – the trial court recessed for the day, allowing the Commonwealth to determine if the distraught victim would be able to continue to testify. The trial court

specifically admonished the Commonwealth not to coach the witness in so doing.

Overnight, J.C. determined that he would be able to continue. The next morning, both J.C. and the Commonwealth, under oath, verified there had been no coaching. Nonetheless, Appellant renewed his objection to the conference between the complaining witness and the Commonwealth and requested either J.C.'s testimony be stricken or a mistrial declared.

Although there is no Kentucky case law directly on point,[4] Reams v. Stutler, 642 S.W.2d 586, 589 (Ky. 1982) provides that "[t]he [separation of witnesses] rule clearly does not restrict trial counsel's freedom to confer with his own witness during trial." Moreover, several other jurisdictions have determined that it is within the trial court's discretion as to whether to allow the prosecution to confer with a testifying witness during a recess. See U.S. v. DeJongh, 937 F.2d 1 (1st Cir. 1991) (finding no error where prosecutor and witness met privately between witness's direct examination and cross-examination); U.S. v. Malik, 800 F.2d 143 (7th Cir. 1986) (finding no error where witness changed testimony after prosecutor routinely conferred with witness during recesses without trial court's authorization); United States v. Calderin-Rodriguez, 244 F.3d 977, 985 (8th Cir. 2001) (applying Fed.R.Evid. 615; holding prosecutor did not violate sequestration order by conferring with witness about his testimony during overnight break in trial); People v. Branch,

---

[4] We note Beckham v. Commonwealth, 248 S.W.3d 547 (Ky. 2008) and Geders v. United States, 425 U.S. 80 (1976) address application of the "rule on witnesses" in an overnight recess. However, both cases analyze application of the sequestration rule on a defendant in a criminal trial, who is guaranteed the assistance of counsel by the Sixth Amendment of the United States Constitution. Here, neither case is applicable, as testifying witnesses are not guaranteed the assistance of counsel.

11

634 N.E.2d 966 (N.Y. 1994) (determining that trial court did not abuse its discretion when it allowed recess so that prosecutor could privately confer with witness after witness changed testimony on direct examination); Will v. Commonwealth, 525 S.E.2d 37 (Va. Ct. App. 2000) (determining that trial court did not abuse its discretion when it allowed mid-testimony conference between prosecutor and victim so that prosecutor could speak to and comfort victim); State v. Delarosa-Flores, 799 P.2d 736 (Wash. Ct. App. 1990) (finding no abuse of discretion in allowing recess and conference between prosecutor and victim when victim changed testimony after conference). Contra People v. Pendleton, 394 N.E.2d 496 (Ill. App. 1979) (determining that prosecutorial overreaching occurred when prosecutor held conference with witness after witness was unable to identify attackers on direct examination and prosecutor attempted to conceal conference from trial court).

Accordingly, we find that it was within the trial court's discretion as to whether to allow the Commonwealth to confer with J.C. during the overnight recess and thus, there was no error.

### III. **Alford** Plea

Lastly, Appellant argues the trial court abused its discretion by refusing to accept Appellant's Alford plea, pursuant to North Carolina v. Alford, 400 U.S. 25 (1970).

Before trial, Appellant attempted to enter an Alford plea to the charges against him. In exchange for his guilty plea, the Commonwealth offered to dismiss 24 out of 26 counts of the indictment and reduce the two remaining charges to sodomy in the second degree. The agreement, made with the

12

consent of the victims, J.C. and A.C., suggested a sentence of five (5) to ten (10) years on the remaining charges. The trial court (Special Judge William Wehr), however, would not accept the <u>Alford</u> plea because of the severity of the charged offenses and because he believed the Sexual Offender Treatment Program (SOTP) could not be undertaken without the admission of guilt by Appellant. The court would, however, accept a standard guilty plea.

Two days later, Appellant filed a motion to reconsider and asked the trial court (Special Judge Robert Overstreet) to reconsider the prior ruling. In support of his position that there was no conflict in his entering an <u>Alford</u> plea and attending SOTP once incarcerated, Appellant cited <u>Taylor v. Commonwealth</u>, No. 2004-CA-001339-MR, 2005 WL 2106585 (Ky. App. Sept 2, 2005). Special Judge Overstreet, however, declined to disturb the earlier ruling.

It is well-settled that a court may refuse to accept a guilty plea. <u>Yell v. Commonwealth</u>, 242 S.W.3d 331, 341 (Ky. 2007); RCr 8.08. It is also settled that a defendant has no constitutional right to plea bargain. <u>Hoskins v. Maricle</u>, 150 S.W.3d 1, 21 (Ky. 2004). We note that:

> Federal courts generally recognize three types of plea bargains. A "sentence bargain" is an agreement in which the prosecutor agrees to recommend or not to oppose a particular sentence in exchange for a guilty plea to the original charge. Since sentencing is a function of the judiciary, a judge's discretion to accept or reject a sentence bargain is unfettered. A "charge bargain," is an agreement by the prosecutor to reduce the original charge in exchange for the defendant's agreement to plead guilty to the reduced charge, and/or to dismiss some charges in exchange for pleas of guilty to others. A "hybrid bargain" is a charge bargain accompanied by an agreement by the prosecutor to recommend or not oppose a particular sentence in exchange for a plea of guilty to the reduced charges. Charge bargains affect the court's sentencing

13

> authority only incidentally, in the same manner as a prosecutor's decision whether to initiate charges restrains the court's sentencing powers. Hybrid bargains implicate not only the prosecutorial authority of the Executive but also the adjudicatory and sentencing authority of the Judiciary and the discretion of a trial court to accept or reject a guilty plea.

Id. at 22. (internal citation omitted)

Thus, a charge bargain, which dismisses or amends one or more charges in exchange for a guilty plea on the reduced charges, or a hybrid bargain, which is a charge bargain with an additional agreement as to sentencing, can be approved or rejected at the discretion of the trial court, so long as the court independently reviews the agreement and sets forth the prosecutor's reasons for the bargain and the court's reasons for rejecting the bargain. Id. at 22-24.

Although Appellant argues both Judges Wehr and Overstreet abused their discretion by rejecting Appellant's Alford plea, we disagree.

Here, in exchange for Appellant's guilty plea, the Commonwealth offered to reduce two first-degree sodomy counts to sodomy in the second-degree and to dismiss the remaining twenty-four (24) counts. Moreover, the Commonwealth would recommend a sentence of five (5) to ten (10) years on the two remaining counts, to be argued by the parties at final sentencing. Thus, this bargain would best be described as a hybrid plea.

In order to properly reject a charge or hybrid plea, the trial court must 1) independently review the agreement, 2) set forth the prosecutor's reasons for the bargain, and 3) set forth the court's reasons for rejecting the bargain. Id. at 24. From the record, it is clear the trial court reviewed the plea agreement. Further, the plea agreement states on its face the reason the Commonwealth

14

made the offer – because the victims consented to it. Lastly, Judge Wehr summarized his reasons for denying the plea agreement – the severity of the charges and Appellant's insistence on an <u>Alford</u> plea, both of which are valid reasons for rejecting a guilty plea. <u>See</u> <u>Hoskins</u>, 150 S.W.3d at 24-25; <u>Yell</u>, 242 S.W.3d at 341.

Thus, as the trial court complied with the <u>Hoskins</u> requirements for rejecting a charge or hybrid plea, the trial court did not abuse its discretion in rejecting the plea agreement.

## Conclusion

For the foregoing reasons, we reverse Appellant's conviction of twenty (20) counts of sodomy in the first degree (under age 12) but affirm the convictions on one (1) count of sodomy first degree (J.C.), two (2) counts of use of a minor in a sexual performance, criminal abuse in the first degree, rape in the second degree, and sodomy in the first degree (forcible compulsion). The trial judge shall enter an amended sentencing order regarding those convictions which have been affirmed. As to the sodomy counts which have been reversed, this matter is remanded to the trial court for further proceedings consistent with this Opinion.

Minton, C.J.; Abramson, Noble, Schroder, Scott and Venters, JJ., concur. Cunningham, J., dissents by separate opinion.

CUNNINGHAM, JUSTICE, DISSENTING: I respectfully dissent from the majority opinion. I fear that it stretches the meaning of palpable error to the breaking point. We have condemned the generic identical type of instructions given in this case and have even reversed when the error was preserved. <u>Miller</u>

15

v. Commonwealth, 77 S.W.3d 566 (Ky. 2002); Harp v. Commonwealth, 266 S.W.3d 813 (Ky. 2008).

However, the majority opinion today takes this practice to a different level in holding that it is palpable error. Under RCr 10.26, an unpreserved error may be reviewed on appeal if the error is "palpable" and "affects the substantial rights of a party." A palpable error "must involve prejudice more egregious than that occurring in reversible error." Brewer v. Commonwealth, 206 S.W.3d 343, 349 (Ky. 2006). Generally, a palpable error affects the substantial rights of a party only if "it is more likely than ordinary error to have affected the judgment." Ernst v. Commonwealth, 160 S.W.3d 744, 762 (Ky. 2005). An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice; in other words, unless the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable." Martin v. Commonwealth, 207 S.W.3d 1, 4 (Ky. 2006).

We should not forget the reason for our reluctance to brand unpreserved trial objections as palpable. Our traditional respect and deference to the trial judges on site behooves us to forebear from imposing our corrections upon judges who were not given opportunity to rule upon them.

Guided by that notion, I do not find the error in the improper giving of identical jury instructions under the circumstances in this case as being "shocking" or "egregious" or "resulting in manifest injustice." Nor do I believe

16

that it rises to the unacceptable level of error to which we have applied the term "palpable" in our previous case law.

Over the last twenty years, we have interpreted palpable error to be considerably more serious than the irregularity present in this case. Brown v. Commonwealth, 763 S.W.2d 128 (Ky. 1989) (cross-examination of defendant concerning prior armed robbery charge for which he had been tried and acquitted); Chumbler v. Commonwealth, 905 S.W.2d 488 (Ky. 1995) (admission of unreliable statistical calculations allegedly tying defendant to a cigarette butt found at murder scene); Barnett v. Commonwealth, 828 S.W.2d 361 (Ky. 1992) (refusal to provide a hearing before excluding sexual activity of complaining witness substantially rebutting testimony of examining physician who expressed findings of chronic sexual contact and identified defendant as guilty party); Perdue v. Commonwealth, 916 S.W.2d 148 (Ky. 1995) (admission of parole eligibility in a death penalty case); Dillingham v. Commonwealth, 995 S.W.2d 377 (Ky. 1999) (introduction at sentencing phase of contents of National Crime Information Center (NCIC) report); McKinney v. Commonwealth, 60 S.W.3d 499, 504 (Ky. 2001) (exclusion of valuable expert psychological evidence on behalf of defendant to rebut damning evidence by the Commonwealth); Robinson v. Commonwealth, 181 S.W.3d 30 (Ky. 2005) (presentation of incorrect or false testimony during the sentencing phase in a drug prosecution); and Commonwealth v. Davidson, 277 S.W.3d 232, 235 (Ky. 2009) (instructing jury on second-degree assault based upon the theory that defendant's fists were dangerous instruments, the reversal of which was based ultimately on other grounds).

17

In Bell v. Commonwealth, 245 S.W.3d 738 (Ky. 2008), we held harmless error if the defendant has been found guilty under all of the identical instructions. That case was overruled by Harp v. Commonwealth, id., where we held that the prosecutor's argument could not serve as proof distinguishing each of the counts. In Harp, we held such instructions were error, but not harmless. Here, we expand the holding in Harp by saying that such instructions are palpable error. For the same reason stated in Bell that such error was harmless, I now state such error, in cases like this, is not palpable.

In Bell, we said: "Because the jury ultimately found Bell guilty of all five counts of sexual abuse, it can be rationally and fairly deduced that each juror believed Bell was guilty of the five distinct incidents identified by the Commonwealth." 245 S.W.3d at 744. The Court there surmised, and it is precisely my point here, that the dangers of identical instructions were not realized. If a jury finds the defendant guilty under some of the identical instructions, but not others, we are not assured of a unanimous verdict on any of them, nor exactly which incident they believed occurred. In such cases, the defendant is not only denied a unanimous verdict, but is also stripped of any realistic basis for appellate review of the conviction.

This was the case in Frederick Miller v. Commonwealth, No. 2007-SC-000048-TG, just decided last month and in which I concurred.

But that is not the case here. Campbell was unanimously found guilty of all of the identical instructions beyond a reasonable doubt. There is no danger lurking of a verdict to any count which was not unanimous.

18

It is difficult for me to understand how, with the sufficiency of the evidence as to all of these counts, the giving of identical instructions was either manifest injustice, or how the outcome of the trial would have been different had the instructions been more particularized.

Palpable error should be shocking, jumping from the pages and screaming out for relief. I fail to see it here. Applying palpable error to the facts of this case waters down the significance of that term and some day soon will return to haunt us.

COUNSEL FOR APPELLANT:

Shelly R. Fears
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601-1133

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

James Coleman Shackelford
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601