Anne ONUJIOGU, etc., et al.,
Plaintiffs, Appellants,

v.

UNITED STATES of America, et al.,
Defendants, Appellees.

No. 86–1174.

United States Court of Appeals,
First Circuit.

Argued April 6, 1987.

Decided April 30, 1987.

**4**

Paul W. McDonough, with whom Wynn, Rosenthal & McDonough, Boston, Mass., was on brief, for plaintiffs, appellants.

Robert P. Powers, with whom Joseph P. Musacchio and Melick & Porter, Boston, Mass., were on brief, for defendant, appellee Keller Industries, Inc.

Before CAMPBELL, Chief Judge, BREYER and SELYA, Circuit Judges.

SELYA, Circuit Judge.

In December 1980, Anne Onujiogu and her son, Ikenna Onujiogu, brought a products liability suit in the United States District Court for the District of Massachusetts against several defendants, including Keller Industries, Inc. (Keller).[1] The plaintiffs alleged that they had sustained severe burns when a stove manufactured by Keller tipped, thereby causing a pot of boiling water to spill on them. Their theory, though variously couched in terms of negligence and breach of warranty, was essentially one of defective design: the stove was neither sufficiently sturdy nor properly balanced. Keller denied liability. A trial ensued.

It was undisputed that Keller manufactured and sold the range, that an accident occurred, that the plaintiffs were hurt (Ikenna to a more serious extent), and that they were taken immediately to a local hospital. There was, however, considerable controversy as to how the accident happened. According to Anne Onujiogu's trial testimony, the mishap took place when she opened the door to the oven and rested a roasting turkey on its extended rack. She had a pipkin bubbling on the front burner at the same time. Setting the turkey on the rack caused the stove to wobble, dislodging the pot. She and her four year old son were scalded by the liquid.

Keller's version of the facts was quite different. The defendant asserted that the range was in good balance, and that the cauldron fell when the minor plaintiff tugged it from the stovetop, spilling its contents onto himself and his mother. At the trial, Keller offered into evidence several excerpts from the archives of the hospital. Included among them was the following statement, contained in the Emergency Room Nurses' Notes (which comprised part of the hospital record):

> 4 yr. old black [male] presents 2–3° burns of R shoulder [,] back, neck & arm sustained following accident when pt. pulled pot of hot water onto himself and mother.

While conceding the general admissibility of the hospital record itself, plaintiffs' counsel objected to this particular notation on hearsay grounds. He maintained, among other things, that its reliability was suspect because it could not be conclusively ascribed to Mrs. Onujiogu, and that it was not "reasonably pertinent to diagnosis or treatment," as would be required to save it under Fed.R.Evid. 803(4).[2] The colloquy

---

1. The claims against all of the other named defendants were resolved short of trial, some by settlement.

2. Fed.R.Evid. 803(4) provides:
   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

   \*      \*      \*      \*      \*      \*

   (4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

below focussed largely upon the applicability *vel non* of Rule 803(4), defense counsel's primary thesis being that the item was admissible as a statement made for purposes of facilitating treatment.

The district court determined as a matter of fact that there was no ambiguity as to the notation's roots; the information unquestionably emanated from Anne Onujiogu. The court was satisfied that Mrs. Onujiogu was the "only source" of the history, the "only person in a position to ... relate what happened." There was simply no other plausible explanation; as the judge observed in a rather picturesque fashion, "this information didn't come in by a carrier pigeon who was flying past the window at the time the accident happened." Finding that the statement was not only attributable to the adult plaintiff, but was reasonably pertinent to medical diagnosis and treatment, the district court admitted it under Fed.R.Evid. 803(4). At the same time, the court sustained objections to the other extracts from the hospital record offered by the defense.[3] The trial concluded without further incident. The jury returned a verdict in Keller's favor. This appeal ensued.

The sole assignment of error put forth by the plaintiffs-appellants is their claim that the district court, by admitting into evidence the statement contained in the Nurses' Notes, abused its discretion. They assert that this evidence was so damaging as to be destructive to their cause (a point with which we readily agree), and that, because it was admitted in error, they deserve a new trial. We hold, however, that the challenged evidence was properly before the jury.

■ We note, first, that the finding anent the origins of the statement is not seriously disputed on appeal. As the appellants' counsel seemed to recognize at oral argument, the judge's conclusion that Mrs. Onujiogu gave the history is, at the very least, supportable by reasonable inference

from the circumstantial evidence. *Cf. United States v. Mendel,* 746 F.2d 155, 167 (2d Cir.1984) (appellee "need only prove a rational basis from which to conclude that the exhibit did, in fact, belong to the appellants"), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985). Although there was no direct proof of it, any other conclusion flies in the face of common sense—and the law is not so struthious as to require courts to ignore the obvious. Attribution of the account of the misadventure to the adult plaintiff cannot plausibly be branded as clear error.[4]

■ In this instance, the (supportable) finding of attribution is all that is required. While the district court's conclusion that the statement was reasonably pertinent to diagnosis or treatment might present a close call under the caselaw interpreting Rule 803(4), we need not reach that issue. So long as the evidence in question was properly before the jury—and it was, *see post*—it matters not whether the court bottomed its admissibility on a precisely "correct" theory or on an arguably "wrong" theory. *See* Fed.R.Evid. 103(a) ("Error may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected....").

■ Following the procedure contemplated by Fed.R.Evid. 104(a), the trial judge found not only that the narrative contained in the hospital record was attributable to Mrs. Onujiogu, but also that its trustworthiness was sufficient to permit the jury to consider it and to pass upon its (ultimate) reliability. These factual findings have ample record support. Thus, the challenged statement was plainly admissible under Fed.R.Evid. 801(d)(2)(A), which provides in material part that:

A statement is not hearsay if ... [t]he statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity....

---

3. We need not concern ourselves at this time with the reasons why these other records were not admitted as full exhibits.

4. The yardstick which governs our review of the district court's factual findings antecedent to its rulings on the admissibility of evidence is the clearly erroneous standard. *See United States v. Patterson,* 644 F.2d 890, 894–95 (1st Cir.1981).

The excerpt from the hospital record met each of the Rule 801(d)(2)(A) benchmarks: it was made by Mrs. Onujiogu (who was a party plaintiff both in her own right and as the mother and "next friend" of her four year old son), it was "an oral ... assertion," Fed.R.Evid. 801(a), and it was offered against the declarant. As the architects of Rule 801 recognized, "A party's own statement is the classic example of an admission." Fed.R.Evid. 801 advisory committee's note. So, the adult plaintiff's description of the manner in which the incident occurred, as set forth in the Nurses' Notes, was by definition not hearsay. Moreover, in this instance, the statement possessed adequate indicia of trustworthiness and was adverse to the speaker's interests. Accordingly, the record was properly admissible into evidence against the plaintiffs. *Accord Walker v. West Coast Fast Freight, Inc.*, 233 F.2d 939, 942 (9th Cir.1956).

■ The appellants argue, alternatively, that even if the controverted statement did not constitute hearsay (or fell within an exception to the hearsay rule), it should nevertheless have been excluded as unfairly prejudicial under Fed.R.Evid. 403.[5] That exhortation is entirely groundless. Where (as here) a piece of evidence is determined to be relevant, the district court has wide discretion in steadying the Rule 403 seesaw. *United States v. Moreno Morales*, 815 F.2d 725, 740, (1st Cir.1987); *United States v. Kadouh*, 768 F.2d 20, 21 (1st Cir.1985); *United States v. Tierney*, 760 F.2d 382, 388 (1st Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *United States v. Kepreos*, 759 F.2d 961, 964 (1st Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). Only in compelling circumstances will we reverse the exercise of a district court's informed discretion concerning the relative weight of probative value and unfairly prejudicial effect. *Tierney,* 760 F 2d at 388; *Kepreos,* 759 F.2d at 964. Such circumstances are notably absent here.

**5.** Rule 403 of the Federal Rules of Evidence provides in pertinent part that:

■ Critically viewed, the account recorded in the Nurses' Notes was of exceedingly high probative value; it bore directly on the central issue in the case. The jury was entitled to consider it. Though the admission was powerful medicine, the appellants can point to no prejudicial effect stemming therefrom, apart from the *justifiable* damage which the statement, if credited by the jury, did to their cause. The fact that a piece of evidence hurts a party's chances does not mean it should automatically be excluded. If that were true, there would be precious little left in the way of probative evidence in any case. "The question is one of 'unfair' prejudice—not of prejudice alone." *Moreno Morales, supra,* at 740. When the Rule 403 query is properly framed for purposes of the instant case, the answer reveals no abuse of the district court's discretion.

We need go no further. Based on what we have said, it is abundantly clear that the plaintiff's appeal lacks merit. The jury verdict must stand. The ensuing judgment in Keller's favor is, therefore,

*Affirmed.*

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....