**John REAL, Plaintiff, Appellant,**

v.

**William T. HOGAN, et al., Defendants, Appellees.**

**No. 86–2072.**

United States Court of Appeals, First Circuit.

Submitted June 5, 1987.

Decided Sept. 11, 1987.

---

John Real, on brief pro se.

Francis G. Chase, Asst. Atty. Gen., and James M. Shannon, Atty. Gen., Boston, Mass., on brief for defendants, appellees.

Before CAMPBELL, Chief Judge, COFFIN and SELYA, Circuit Judges.

SELYA, Circuit Judge.

In this appeal, plaintiff-appellant John Real, proceeding *pro se*, contests the entry of judgment in favor of the appellees, defendants below, pursuant to a jury verdict. He asserts that his trial was fatally flawed in a variety of ways. After carefully considering his arguments and scrutinizing the available record, however, we find no merit in any of his contentions. Instead, it appears that Real, who was represented by able counsel in the district court, received a fair and impartial trial. Under these circumstances, we reject the appeal and affirm the judgment.

I. BACKGROUND.

In 1980, John Real, then incarcerated at the Massachusetts Correctional Institute at Walpole (MCI–Walpole), was a prime suspect in the stabbing death of another pris-

oner. As such, he was subjected, shortly after the killing, to a test, the object of which was to detect traces of the victim's blood on his hands. This test was performed by defendants John Nasuti (a state trooper) and Robert Sullivan, (a chemist from the Commonwealth's crime laboratory), aided by an assistant district attorney, Ruth McNiff. The laboratory was within the domain of defendant Dennis Condon, the Commissioner of Public Safety.[1] The test consisted of rubbing Real's hands and fingernails with filter paper and, after this perfrication was completed, applying certain chemicals (benzidine and sodium perborate) to the filter paper. If blood particles were present to any degree, they would emerge when the filter paper was doused and an intense blue color reaction would immediately suffuse the paper. In Real's case, the test results were positive.

In a civil suit subsequently filed in the United States District Court for the District of Massachusetts, Real alleged that benzidine was applied not to the filter paper, but directly to his skin. In so doing, the defendants were said to have exposed him to an increased risk of contracting cancer of the bladder (benzidine being a human carcinogen), thus violating his constitutional rights. All of the state actors denied these allegations. The record leaves no doubt but that Real was vigorously represented throughout trial, and before. The jury found that, contrary to the appellant's story, benzidine was not applied directly to his skin. All of the defendants were exonerated. A motion for new trial was filed on Real's behalf by his attorney, but was denied. Real then commenced this proceeding without benefit of counsel.

We note that plaintiff has prosecuted this appeal without procuring a trial transcript. We must, therefore, examine the existing record. If it proves inconclusive, it is the appellant who must bear the brunt of an insufficient record on appeal. *See*

---

1. Other defendants in the case included William T. Hogan, the former Commissioner of Corrections; Fred Butterworth, Superintendent of MCI–Walpole; Thomas DaSilva, supervisor of the prison's departmental segregation unit; and "John Doe" (said to be a correctional officer at MCI–Walpole).

*Valedon Martinez v. Hospital Presbiteriano de la Comunidad, Inc.*, 806 F.2d 1128, 1135 (1st Cir.1986); *Sanabria v. International Longshoremen's Assoc. Local 1575*, 597 F.2d 312, 313 (1st Cir.1979); *Hayes v. Consolidated Service Corp.*, 517 F.2d 564, 566 (1st Cir.1975). *See also* F.R.A.P. 10(b).

## II. THE ASSIGNMENTS OF ERROR.

The appellant has advanced a salmagundi of points, most of which are so transparently invalid that we need not dwell upon them. We address below a representative sampling of his main arguments.

### A. *New Trial.*

■ Real protests, first and foremost, the district court's refusal to grant him a retrial. It is well settled that the district court should order a new trial only when convinced that the clear weight of the evidence so requires or that a miscarriage of justice would otherwise result. *Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 6 (1st Cir.1982), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1983); *Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986, 990 (1st Cir.1978). The standard which governs our review is equally plain. We will reverse the denial of such a motion only for abuse of discretion. *Codex Corp. v. Miglo Electronic Corp.*, 717 F.2d 622, 632 (1st Cir.1983); *Nimrod v. Sylvester*, 369 F.2d 870, 873 (1st Cir.1966). Having assayed the record with as much care as is possible given its incompleteness, we cannot say that the district court abused its discretion in this case. Indeed, the trial appears to have presented a classic clash of conflicting accounts—exactly the sort of credibility conundrum that a jury is uniquely equipped to resolve. This specification of error comes to naught.

### B. *Mistrial Motion.*

■ The appellant claims that the district court erred in denying his motion for a mistrial before any evidence was taken. In the opening statement, defendants' counsel referred to the fact that Real was a suspect in the stabbing death of a fellow inmate, and that after the stabbing, Real went back to his cell to wash blood from his hands. Real's attorney moved unsuccessfully for a mistrial. In the appellant's view, this statement was so prejudicial that the jury could not thereafter fairly pass upon his case. In a related vein, he also contends that the remarks violated the district judge's ruling granting Real's motion *in limine* to bar references to his past crimes and misconduct unrelated to the benzidine test.[2]

A motion for mistrial is directed primarily to the sound discretion of the trial court and its ruling thereon will not be disturbed unless that discretion has been misused. *United States v. Chamorro*, 687 F.2d 1, 6 (1st Cir.), *cert. denied*, 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 613 (1982); *United States v. Pappas*, 611 F.2d 399, 406 (1st Cir.1979). We find no such difficulty in this instance. In the first place, the record shows that the court did not grant Real's motion *in limine* until after the opening statements had been made. Thus, the reference did not transgress an existing ruling. And in any event, it likely fell within the pale staked out by the limitation. *See supra* n. 2.

■ In the second place, it does not seem unreasonable for the district judge to have allowed defense counsel to describe the context in which the benzidine test was administered, even though that context involved a murder of which Real was suspected. Real does not contest that what counsel said was accurate, and comported with the evidence subsequently proffered. In kindred settings, details of illegal acts, including murder, have been allowed, in the district court's discretion, to show the chain of events forming the context. *E.g., United States v. Moreno Morales*, 815 F.2d 725, 739–40 (1st Cir.1987); *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983),

---

**2.** It is difficult to tell from the papers available to us the scope of the order *in limine.* The defendants assure us that, in granting *in limine* relief, "the court specifically allowed reference to the homicide ... at MCI Walpole." Appellees' Brief at 11. The plaintiff has not contradicted this description of the ruling.

*cert. denied,* 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984). We have repeatedly acknowledged that the district judge must be given considerable leeway in balancing probative value against the risk of unfair prejudice. *E.g., United States v. Cintolo,* 818 F.2d 980, 998 (1st Cir.1987); *United States v. Moreno Morales,* 815 F.2d at 739–40; *United States v. Tierney,* 760 F.2d 382, 388 (1st Cir.), *cert. denied,* 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *Dente v. Riddell, Inc.,* 664 F.2d 1, 5 (1st Cir.1981). *See generally* Fed.R.Evid. 403. The decision to allow the interdicted remarks was well within the ambit of this leeway. A trial is a search for truth and cannot sensibly take place in a vacuum.

Moreover, the jury was treated to far more information on the point than was contained in the opening statement—and the incremental data was considerably more detailed. For instance, the appellant admits that while cross-examining McNiff, his own lawyer elicited specifics about Real's role in the homicide which were, on any reasoned view, much more damaging. We can discern no hint of reversible error in the district court's handling of the mistrial motion.

### C. *Jury Selection.*

■ Real asserts that the jury selection process was deficient in two material respects. He argues that the district court erred in refusing to ask twenty-one voir dire questions which his lawyer proposed in an effort to discover prejudice or bias on the part of prospective jurors. Yet the district court has broad discretion as to the manner in which it conducts the voir dire and the inquiries it chooses to make, subject only to the essential demands of fairness. *United States v. Desmarais,* 531 F.2d 632, 633 (1st Cir.1976); *Goosman v. A. Duie Pyle, Inc.,* 320 F.2d 45, 49–50 & n. 1 (4th Cir.1963). It need not permit counsel to dominate the process, nor pose every voir dire question requested by a litigant. It is more than enough if the court covers the substance of the appropriate areas of concern by framing its own questions in its own words. *Darbin v. Nourse,* 664 F.2d 1109, 1113 (9th Cir.1981); *United States v.*

*Nell,* 526 F.2d 1223, 1230 n. 9 (5th Cir. 1976). We review the trial judge's choices in this regard only for abuse of discretion. *Goosman,* 320 F.2d at 49–50.

■ In the instant case, the appellant has provided us with no rational basis for finding that the voir dire conducted by the district court was inadequate or materially incomplete. There is nothing to suggest that, to the extent Real's proposed questions were suitable, the court did not cover substantially the same ground. Contrary to the appellant's hypothesis, the mere fact that the court elected to bypass the specific questions formulated by Real's counsel does not translate, *ipso facto,* into an abuse of discretion. In the absence of any meaningful indication that the district court was lax in carrying out its obligation to screen the venire for prejudice or bias, or that the jury was in fact slanted from the start, this argument must fail.

■ The appellant also contends that the jury's composition (five women and the foreman) came about because the defense used its peremptory challenges systematically to exclude males from the jury. The appellant provides no evidence that this claim was preserved by a contemporaneous objection at trial. Failure to do so is, in itself, fatal to the argument. *United States v. Griffin,* 818 F.2d 97, 100 (1st Cir.1987) ("a party cannot sleep upon perceptible rights, but has an obligation to alert the district judge to error-in-the-making"); *cf. United States v. Sgro,* 816 F.2d 30, 33 (1st Cir.1987) (defendant alleging purposeful discrimination in jury selection based on prosecutor's exercise of peremptory challenges must carry at least a "minimal burden" before the district court). To be sure, even without preservation of the point, we could nonetheless act to remedy "plain error." *Griffin,* 818 F.2d at 100. But, we see none here. The appellant furnishes no substantial food for thought to nourish his discrimination theory other than mentioning that one man (out of two who were called) was excluded from the jury as a result of the defendants' use of a nonaccountable challenge. That is simply

too scanty a portion to feed a "plain error" claim of supposed sex discrimination in the jury selection process.

### D. *Physical Examination.*

■ Real argues that he was severely hampered in presenting his case because the district court refused to postpone the trial to enable him to undergo a physical examination. He says that the exam would have been a vital step in determining whether he had developed cancer as a result of his alleged bout with benzidine. The record shows, however, that it was the defendants who originally sought such an examination under Fed.R.Civ.P. 35, and that Real opposed their motion. The court, nevertheless, granted it. Thereafter, several appointments were made for the examination, but Real neglected to keep any of them. The defendants, weary of spinning their wheels, then dropped their demand. A peremptory trial date was assigned well in advance. It was only a matter of weeks beforehand that the plaintiff decided an exam might be in his best interest, and moved to reinstate the Rule 35 order. His motion was granted, but no doctor's appointment was kept,[3] and the planned trial date arrived on schedule. The judge refused to vacate it.

The Federal Rules must be construed to secure not only the "just" but the "speedy" determination of every action. Fed.R. Civ.P. 1. A litigant who desires to avail himself of the benefices of the rules has an obligation to employ reasonable diligence in doing so. Real, of course, held the key to permitting an examination to take place. He had virtually limitless opportunities to accomplish this end. From what is before us, neither defense counsel nor the district court can be faulted in regard to the plaintiff's failure to keep the appointments which had previously been arranged. It

comes with peculiarly poor grace for a party repeatedly to thwart the conduct of a physical examination, and then to complain that it was not performed. *Cf. United States v. Coady,* 809 F.2d 119, 121 (1st Cir.1987) (defendant's midtrial representation to court that entrapment not in issue barred later resurrection of the defense); *United States v. Tierney,* 760 F.2d at 388 ("Having one's cake and eating it, too, is not in fashion in this circuit."). That he later changed his mind is not sufficient mitigation.

Motions for continuance are addressed to the informed discretion of the district court. *United States v. Waldman,* 579 F.2d 649, 653 (1st Cir.1978). Real's case had been pending for some four years before it was called on this occasion. The trial had been postponed before, at least once at the plaintiff's request. Real had repeatedly frustrated defense attempts to have him examined. He had not seasonably taken affirmative steps to right the situation. And, it is not without significance that, as we have earlier held, the grant or denial of a Rule 35 motion "clearly . . . rests in the sound discretion of the trial court." *Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres,* 255 F.2d 149, 153 (1st Cir.1958). *Cf.* Fed.R.Civ.P. 35(a) (court "*may* order . . . physical or mental examination . . . for *good cause shown.* . . .") (emphasis supplied). Inasmuch as the district court could simply have denied Real's motion to reinstate the Rule 35 order, it is difficult to see any reason why the court was disabled from deciding—as indeed it did—that the need for completion of the long-anticipated exam was of a lower priority than the need to hew to the announced trial schedule.

In endeavoring to manage crowded calendars in busy jurisdictions, trial judges must balance an array of considerations—

---

**3.** The reasons why the examination did not transpire after reinstatement of the Rule 35 order must, absent a more complete record, remain obscure (although there is some indication that time simply did not permit arranging an appointment, coordinating the schedules of all concerned, and obtaining a meaningful report in advance of trial). In any event, the precise reason would likely not be dispositive. Had he timely so requested, Real could have seen a physician during the four years which intervened between the filing of suit and the start of trial. He chose not to do so. Conversely, the defendants had attempted in good faith to have him examined. If the plaintiff had not obstructed that endeavor, there would have been no need for last-minute heroics. On any view of the matter, it was unreasonable for Real to expect the court to wait upon his late-blooming decision.

sometimes, competing considerations. We will not second guess the conduct of such efforts without solid reason. Here, all of the indicators point in favor of deference to the court below. We hold that it was well within the district judge's discretion to spurn the appellant's eleventh-hour turnabout, and decline to delay a long-awaited trial to accommodate his change of heart.[4]

### E. *The Simulation.*

█ The appellant also alleges that the court erred in allowing the defendants to demonstrate the benzidine test originally performed on him, replacing the benzidine—which was no longer commercially available—with a chemical of the same class, group, and family.[5] Such a simulation, however, might well have been helpful to the jury's understanding of the case. Trial judges have wide discretion in deciding whether an adequate foundation has been laid for the admission of evidence. *See Onujiogu v. United States*, 817 F.2d 3, 5 (1st Cir.1987); *United States v. Golden*, 671 F.2d 369, 371 (10th Cir.1982). They likewise possess front-line authority to ascertain whether or not the differences between a simulated scenario and the actual one warrant the sustaining of an objection to the evidence. *See, e.g., In re Beverly Hills Fire Litigation*, 695 F.2d 207, 223 (6th Cir.1982).

█ In this instance, the experiment was easy to control, the variable easy to define, the risk of confusion correspondingly slight. The appellant has failed to show that the foundation laid by the defense through the examination of an expert witness was inadequate for the proper admission of the modified chemical test into evidence, or that the jury was somehow misled. To be sure, the simulation may have prejudiced the jury in favor of the defendants' version of the critical event and against the plaintiff's; that was, after all, why the defense wanted to conduct it. The law protects not against prejudice, but

against *unfair* prejudice. *Onujiogu v. United States*, 817 F.2d at 6; *United States v. Moreno Morales*, 815 F.2d at 740. Here, as in *Onujiogu*, "[t]hough the admission [of the evidence] was powerful medicine, the appellant[ ] can point to no prejudicial effect stemming therefrom, apart from the *justifiable* damage which [it], if credited by the jury, did to [his] cause." 817 F.2d at 6 (emphasis in original). There was no abuse of discretion in the decision to permit enactment of the simulated procedure.

### III. CONCLUSION.

We need go no further. The appellant's remaining contentions, like those which we have discussed, are unavailing. Real has not brought to our attention any circumstances which would warrant a new trial. We conclude that the district court did not commit reversible error in its rulings at or during the trial, or in denying the appellant's posttrial Rule 59 motion. Real's case was fairly heard. His complaint, at bottom, is merely that he lost.

*Affirmed.*

█

---

[4.] Because we find the ruling to have been a proper exercise of the district court's discretion, we need not reach the alternative argument that, if error occurred, it was harmless. In the defense's view, the probative value of evidence of cancer went primarily to damages—an issue

which the jury, as matters turned out, had no need to consider.

[5.] The substitute produced a benzidine-like reaction to the presence of blood.