Philip POULIN

v.

CUSTOM CRAFT, INC., et al.

No. 2009–160–Appeal.

Supreme Court of Rhode Island.

June 16, 2010.

Bruce P. Gladstein, Esq., for Plaintiff.

Meghan E. Siket, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The plaintiff, Philip Poulin, appeals from a summary judgment in favor of the defendants, Custom Craft, Inc., and its president, Gerard Auclair. The plaintiff's complaint alleged unlawful discrimination by the defendants, his former employers, on the basis of a disability. The plaintiff contends that an unresolved issue of material fact precluded summary judgment, and that the hearing justice failed to draw all reasonable inferences in his favor in deciding the motion. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the record and considering the parties' submissions, we are satisfied that the appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

The defendant Custom Craft is a family-owned business that manufactures cushions, umbrellas, and related products for patio specialty stores and furniture manufacturers. The business employs approximately twenty-five people and is located in West Warwick, Rhode Island. Mr. Auclair, also a named defendant, is the president of Custom Craft. The plaintiff was employed at Custom Craft from 1983 until 2004, most recently as plant manager. As plant manager, plaintiff was the company's second-in-command after Mr. Auclair.

Mr. Poulin testified at a deposition that since at least 1998 he has suffered from anxiety and depression, for which he sought medical treatment. He did not recall anyone employed at Custom Craft telling him that he could not attend medical appointments for his anxiety and depression during the first several years he received such treatment.

On March 12, 2002, Mr. Poulin suffered what the parties term a "nervous breakdown" at work and subsequently was out of work for two weeks. After this episode, he attended appointments with Paul Hoffman, a social worker, once or twice a week, and occasionally with a psychiatrist. On June 4, 2002, however, plaintiff had a second "nervous breakdown" in Mr. Hoffman's office. As a result, he was admitted

to Butler Hospital for several days and was out of work for two weeks.

Thereafter, Mr. Poulin continued to attend therapy appointments for his anxiety and depression. According to plaintiff, around this time, Mr. Auclair questioned him on three or four occasions as to why he was absent from work to attend medical appointments so frequently, and as to the length and the scheduled times of his appointments. Mr. Auclair told him, however, to take whatever time he needed. Mr. Poulin also acknowledged that Mr. Auclair did not question him further about such appointments between July 2002 and July 2004. Mr. Poulin testified that, notwithstanding his need to attend these appointments, he was able to perform his job and that he did not request any special accommodations.

The plaintiff alleges that, beginning in 2002, Mr. Auclair reprimanded him on numerous occasions for his job performance and changed his job duties "for the sole purpose of harassing and discriminating against" him. Further, in October 2002, plaintiff received a discretionary bonus that was substantially less than bonuses given to two other employees.[1]

The defendants maintain that Mr. Poulin's job performance had deteriorated and that he had engaged in "acts of insubordination." The defendants claim Mr. Auclair needed to have weekly or biweekly conversations with plaintiff concerning his job performance. The plaintiff admits to having had such conversations, but suggests such meetings were rare and "either were very short and insignificant" or did not involve important issues.

The defendants specifically assert that plaintiff delegated work poorly. Further,

defendants contend that plaintiff let supplies run low, did not do a good job of organizing the "filling" department, and secretly checked the payroll for executive bonus information when he did not have authorization to do so.

Additionally, defendants allege that plaintiff instigated "verbal altercations" on numerous occasions with several coworkers. While plaintiff admitted to contentious conversations with at least two coworkers, plaintiff claims he did not instigate these disputes. Mr. Auclair additionally indicated that plaintiff complained about him to several employees and that he also had heard that plaintiff told several employees that he (plaintiff) "didn't care anymore."

Mr. Auclair testified that in May 2004 he met with plaintiff to specifically address plaintiff's attitude and performance problems. A few months later, on July 27, 2004, Mr. Auclair received a faxed note from Dr. Michael Martin. The letterhead of the note indicated that Dr. Martin was a doctor of osteopathic medicine who was board certified in internal medicine. The note simply stated that plaintiff would not be able to return to work until August 9, 2004; it did not provide any reason necessitating the absence. It is undisputed, however, that the condition diagnosed by Dr. Martin was high blood pressure.

A short time after receiving the faxed note, and while Mr. Poulin still was out of work, Mr. Auclair ran into Mr. Poulin at a comedy show on a Friday night. Mr. Auclair told plaintiff to come see him at work the next morning and, when plaintiff complied, he terminated plaintiff's employment. Mr. Auclair stated that he could no longer tolerate plaintiff's lack of respect for him as his employer. He explained

---

1. The defendants claim, however, that plaintiff received approximately the same amount of money over his base salary as the other two individuals when his participation in Custom Craft's profit-sharing program is taken into consideration.

that plaintiff showed his lack of respect in the following ways:

"By faxing in his doctor's papers, saying he was going to be out for two weeks. He made absolutely no effort to contact me to tell me what was wrong with him. He made no effort whatsoever to contact anyone at Custom Craft to discuss how we were going to cover for him for two weeks while he was out. He showed absolutely no concern, no caring whatsoever for the company at our busiest time of the year, our most critical time of the year. In my 40 years of experience, I haven't had an employee at any level show such disregard to fax in, never mind someone second in command."

Mr. Auclair testified that the fax was not the only reason for the termination; rather, he described it as "the straw that broke the camel's back." Mr. Auclair was upset when he saw plaintiff at a comedy show, as it distressed him that apparently plaintiff was well enough to attend the show and yet had not called into work all week.

Subsequently, plaintiff filed a petition with the Rhode Island Commission for Human Rights, claiming discrimination by defendants based on his alleged "mental disability." The commission issued a notice of right to sue to plaintiff in September 2005. The plaintiff then filed the instant action in Superior Court on October 7, 2005.

Mr. Poulin alleged that he is disabled because he has been diagnosed with anxiety and depression. His complaint included counts for discrimination under the State Fair Employment Practices Act, G.L.1956 chapter 5 of title 28 (FEPA), and the Rhode Island Civil Rights Act, G.L. 1956 chapter 112 of title 42 (RICRA).[2] The defendants answered the complaint on December 14, 2005.

Thereafter, defendants filed a motion for summary judgment. The defendants asserted that plaintiff's claims of discrimination could not succeed because he was not, in fact, disabled under the law. The defendants also maintained that plaintiff failed to establish a nexus between his alleged disability and his termination.

A hearing on defendants' motion for summary judgment was held on August 5, 2008. In her bench decision, the hearing justice did not decide whether plaintiff was disabled within the meanings of FEPA and RICRA.[3] Instead, the hearing justice ruled that, even assuming plaintiff was disabled, there was no evidence supporting his claim that defendants took adverse employment action against him because he suffered from anxiety and depression.

The hearing justice noted "[t]here were definitely issues as to [Mr. Auclair's] job satisfaction with [plaintiff] unrelated to the * * * doctor appointments." Ultimately, however, the hearing justice determined plaintiff was terminated because of the faxed note and because Mr. Auclair saw him at a comedy show during the two-week period he was on medical leave in July 2004. Further, the hearing justice concluded that "the [medical] note did not in any way, shape or form connect * * * the depression [or] the anxiety to the absence from work." Additionally, she noted

---

**2.** In his complaint, plaintiff also alleged that defendants committed intentional infliction of emotional distress. However, plaintiff does not press this argument on appeal. Therefore, the issue has been waived.

**3.** Both FEPA and RICRA define disability to include "any physical or mental impairment which substantially limits one or more major life activities" and define "major life activities" to include, without limitation, "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." G.L.1956 § 42–112–1; G.L.1956 § 28–5–6(4)(ii).

that "the timing of his termination dictates against concluding that [plaintiff's] anxiety and his depression caused the termination." Thus, the trial justice granted defendants' motion for summary judgment on the basis that plaintiff failed to make out a *prima facie* case that he was terminated because of a disability.

▮ The plaintiff filed a notice of appeal on August 20, 2008. Final judgment was entered on March 23, 2009.[4]

## II

### Standard of Review

▮ We review a trial justice's decision to grant summary judgment *de novo*. *Credit Union Central Falls v. Groff*, 966 A.2d 1262, 1267 (R.I.2009). "[W]e will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 638 (R.I.2005) (quoting *DiBattista v. State*, 808 A.2d 1081, 1085 (R.I.2002)). Further, a party "opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *D'Allesandro v. Tarro*, 842 A.2d 1063, 1065 (R.I.2004) (quoting *Santucci v. Citizens Bank of*

*Rhode Island*, 799 A.2d 254, 257 (R.I. 2002)).

## III

### Discussion

▮ On appeal, plaintiff argues that the hearing justice erred in granting summary judgment for defendants because there was a material issue of fact in dispute as to whether plaintiff was terminated because of his disability. The plaintiff argues that the hearing justice did not draw all reasonable inferences in his favor as the nonmoving party.[5]

Specifically, plaintiff argues the hearing justice erred in determining that the medical note from Dr. Martin had no apparent connection to plaintiff's anxiety or depression. The plaintiff also argues that, even if the note had no apparent connection to plaintiff's condition, the hearing justice erred in ruling there were no material facts in dispute to support plaintiff's assertion that he was terminated because of his anxiety or depression. The plaintiff argues the statement by Mr. Auclair in his deposition that the faxed medical note was "the straw that broke the camel's back" created a material issue of fact in this regard. The plaintiff suggests that this statement indicates Mr. Auclair had, over time, grown tired of plaintiff missing work for medical appointments. If this were the case, plaintiff contends, his termination was the result of his anxiety or depression.

▮ A *prima facie* case of disability discrimination requires a showing that (1)

---

4. Although the plaintiff's notice of appeal was premature, it is nevertheless valid as final judgment was ultimately entered. *See Holden v. Salvadore*, 964 A.2d 508, 512 n. 6 (R.I. 2009).

5. The plaintiff also asserts that the medical note was not properly before the Superior Court, because defendants did not provide the

note to the court with their motion for summary judgment. At the hearing on defendants' motion for summary judgment, however, plaintiff did not object when the hearing justice asked to see the medical note, or even when she read the medical note into the record. Thus, we deem this argument to be waived.

the employee was disabled within the meaning of the relevant statutes, (2) the employee was able to perform the essential functions of his or her job (with or without reasonable accommodation), and (3) the employer discharged the employee in whole or in part because of the disability. *DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13, 25 (R.I.2005). Under the burden-shifting framework we apply in employment discrimination cases, "[o]nce a prima facie case has been established, the employer then must offer a legitimate, non-discriminatory reason for discharging that employee and then the employee must convince the fact-finder that the reason offered by the employer is a pretext for discriminatory animus." *Id.*

Based on our *de novo* review, we agree with the hearing justice that plaintiff failed to make out a *prima facie* case that defendants discharged plaintiff because of his anxiety and depression. The evidence presented does not suggest that plaintiff was terminated because of his anxiety and depression. Rather, the evidence suggests that Mr. Auclair terminated plaintiff because of plaintiff's failure either to explain his two-week absence from work in July 2004 or to attempt to mitigate the hardship it created for defendants, coupled with his presence at a Friday night comedy show during that period. Further, the record offered no evidence that Mr. Auclair had reason to believe that plaintiff's absence in July 2004 was related to his anxiety and depression, or that Mr. Auclair terminated plaintiff because he did not approve of him leaving work to attend medical appointments.

The only notice defendants received of plaintiff's two-week absence did not indicate that the absence was related to plaintiff's anxiety and depression: Dr. Martin was board certified in internal medicine, and his letterhead so indicated. Doctor Martin was treating plaintiff for high blood pressure, which plaintiff claims was related to his anxiety. The note, however, simply excused plaintiff from work without providing further explanation. There are many reasons a doctor of internal medicine might excuse a patient from work. We fail to see any evidence in the record from which an inference reasonably can be drawn connecting the note from a doctor of internal medicine to plaintiff's anxiety and depression.

Further, plaintiff failed to present evidence connecting Mr. Auclair's "straw that broke the camel's back" comment to Mr. Poulin's anxiety and depression. Rather, the evidence indicates that plaintiff's on-the-job conduct led Mr. Auclair to characterize the July 2004 events as the proverbial "last straw." Mr. Auclair stated that he had reason to believe plaintiff did not respect him and that plaintiff was not sufficiently dedicated to his job. Additionally, plaintiff's medical leaves of absence after his "nervous breakdowns" occurred two years prior to his termination, and plaintiff admitted that Mr. Auclair did not speak with him about his medical appointments during that two-year period. We agree with the hearing justice that this timing "dictates against concluding that his anxiety and his depression caused the termination."

The initial burden was on the plaintiff to establish a *prima facie* case of employment discrimination. We are persuaded that the plaintiff did not satisfy this burden. The plaintiff did not present any material evidence supporting his claim that he was terminated because he suffered from anxiety and depression. Thus, we affirm the hearing justice's decision to grant summary judgment for the defendants.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers will be returned to the Superior Court.

Justice INDEGLIA took no part in the consideration or decision of this appeal.