# United States Court of Appeals
## For the First Circuit

No. 17-1049

MOIRA E. TEIXEIRA,

Plaintiff, Appellant,

v.

TOWN OF COVENTRY, by and through its Treasurer,
THEODORE PRZYBYLA, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter, Associate Justice,[*]
and Selya, Circuit Judge.

Mark P. Gagliardi and Law Office of Mark P. Gagliardi on brief
for appellant.
Marc DeSisto, Kathleen A. Hilton, DeSisto Law LLC, Nicholas
Gorham, and Gorham & Gorham on brief for appellees.

February 7, 2017

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme
Court of the United States, sitting by designation.

**SELYA**, **Circuit Judge**. The McDonnell Douglas framework, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973), has proven to be a useful tool in the adjudication of pretrial motions (especially at the summary judgment stage) in discrimination and retaliation cases. See, e.g., Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016) (discrimination); Henry v. United Bank, 686 F.3d 50, 55 (1st Cir. 2012) (retaliation). Jury instructions, however, are a different medium, and some courts have expressed concern about the suitability of the McDonnell Douglas framework for that purpose. See, e.g., Sharkey v. Lasmo (AUL Ltd.), 214 F.3d 371, 374 (2d Cir. 2000) (expressing the view that "[i]nstructing the jury on [the] complex process [of McDonnell Douglas burden-shifting] produces no benefit and runs the unnecessary risk of confusing the jury"); Loeb v. Textron, Inc., 600 F.2d 1003, 1016 (1st Cir. 1979) (warning that reading McDonnell Douglas's "technical aspects to a jury . . . will add little to the juror's understanding of the case").

In our view, the McDonnell Douglas framework can, in the trial court's discretion, be put to effective use in the shaping of jury instructions. The key, we think, is for the trial court to refrain from rote recitation of the complex McDonnell Douglas process and the legalistic terms in which the McDonnell Douglas framework is typically couched. Thus, a trial court that wishes to use the framework as part of its jury instructions should

- 2 -

translate it into everyday parlance and fit it to the facts and circumstances of a particular case. Here, the court below did just that.

Given the satisfactory nature of the district court's jury instructions as a whole, we discern no merit in the appellant's claims of error. Accordingly, we affirm the judgment below.

## I.  BACKGROUND

We briefly rehearse the facts and travel of the case. Plaintiff-appellant Moira E. Teixeira toiled as a social worker for the Town of Coventry, Rhode Island (the Town), in its Department of Human Services. Over the course of roughly three years, the appellant took three medical leaves, comprising nearly eight months in aggregate leave time. Matters came to a head on June 14, 2013: as the appellant returned from her latest leave, she was fired. The Town represented that her dismissal was based on poor job performance (including violations of department protocols, breaches of confidentiality, and repeated failures to complete work assignments).

Displeased with the Town's actions, the appellant repaired to the federal district court and sued both the Town and her supervisor, Patricia Shurtleff. Her complaint alleged violations of federal and state law, including the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2619, and the Rhode

Island Civil Rights Act (RICRA), R.I. Gen. Laws § 42-112-1. Specifically, she claimed that she had been both retaliated against for taking medical leave and discriminated against on account of disability.[1]

Following extensive discovery and a week-long jury trial, the district court sent the case to the jury. With reference to the FMLA and RICRA counts, the court instructed the jury using an adapted version of the McDonnell Douglas framework (over the appellant's objection). After deliberating, the jury returned a take-nothing verdict in favor of the defendants.

The appellant moved for a new trial, lodging (inter alia) two claims of instructional error in connection with the FMLA and RICRA counts: she asserted that the district court had erred in employing the McDonnell Douglas framework in its jury instruction and that the court had erred when it instructed the jury to consider whether the appellant had shown that the defendants' reasons for cashiering her were pretextual. The district court found no fault with the instructions it had given and denied the motion for a new trial. This timely appeal ensued.

---

[1] The appellant's complaint also contained two other counts. Because her appeal is limited to her FMLA and RICRA claims, we omit any discussion of the other counts.

## II.  ANALYSIS

The appellant brought her motion for a new trial under Federal Rule of Civil Procedure 59(a).  In effect, that rule authorizes a district court to override a jury verdict and order a new trial "if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice."  Casillas-Díaz v. Palau, 463 F.3d 77, 81 (1st Cir. 2006).  We review a district court's denial of a motion for a new trial for abuse of discretion.  See Ira Green, Inc. v. Military Sales & Serv. Co., 775 F.3d 12, 18 (1st Cir. 2014).  Here, the district court's denial of the appellant's new trial motion was predicated upon its rejection of the appellant's claims of instructional error.  A verdict that results from prejudicial error in jury instructions is a verdict that is against the law and, therefore, the denial of a new trial motion in the face of such an error is an abuse of discretion.  See id.

We "afford de novo review to 'questions as to whether jury instructions capture the essence of the applicable law, while reviewing for abuse of discretion . . . the court's choice of phraseology.'"  Id. (quoting DeCaro v. Hasbro, Inc., 580 F.3d 55, 61 (1st Cir. 2009)).  Unpreserved claims of instructional error, though, are reviewed only for plain error.  See United States v. Deppe, 509 F.3d 54, 58 (1st Cir. 2007).

Against this backdrop, we turn to the appellant's twin claims of instructional error. Because those claims trigger different standards of review, we discuss them separately.

## A. The McDonnell Douglas Claim.

Some general principles inform our consideration of the appellant's primary claim. As we have explained, "[j]ury instructions are intended to furnish a set of directions composing, in the aggregate, the proper legal standards to be applied by lay jurors in determining the issues that they must resolve in a particular case." United States v. DeStefano, 59 F.3d 1, 2 (1st Cir. 1995). So long as the court's jury instructions accomplish this task, its "choice of language is largely a matter of discretion." Id.

The appellant argues that the district court erred by including the McDonnell Douglas framework in its charge to the jury. This framework, she says, was apt to have confused the jurors and may well have caused them to return an inadvertent verdict. Taken in context, the appellant's plaint is not that the district court incorrectly instructed the jury on the law but, rather, that the court's instructions were made unduly confusing by its allusion to the McDonnell Douglas framework. This claim of error was seasonably raised at trial and, as a result, our review is for abuse of discretion. See Deppe, 509 F.3d at 58.

We need not tarry. The Supreme Court's development of the McDonnell Douglas framework is a landmark in the realm of discrimination law. In this landmark decision, the Court did not restrict the use of the McDonnell Douglas framework to pretrial motions. Since then, lower courts routinely have signaled their approval of the use of adapted versions of the McDonnell Douglas framework to help jurors understand their roles in determining the merits of discrimination and retaliation cases. See, e.g., McDonough v. City of Quincy, 452 F.3d 8, 17 (1st Cir. 2006) (retaliation); Rodriguez-Torres v. Carib. Forms Mfr., Inc., 399 F.3d 52, 58 (1st Cir. 2005) (discrimination). We know of no authority categorically forbidding the use of the McDonnell Douglas framework in the formulation of jury instructions. Nor do we favor any such categorical prohibition.

To be sure, some courts have worried that rote recitation of the McDonnell Douglas framework may be confusing to a jury, see, e.g., Sharkey, 214 F.3d at 374; Loeb, 600 F.2d at 1016, and we do not quarrel with that limited proposition.[2] But in the case

---

[2] We note that even those courts that have expressed concern about the use of the McDonnell Douglas framework in jury instructions have, by and large, declined to find reversible error. See, e.g., Sharkey, 214 F.3d at 374; Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317, 1322 (11th Cir. 1999); Messina v. Kroblin Transp. Sys., Inc., 903 F.2d 1306, 1308-09 (10th Cir. 1990). But cf. Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 118 (2nd Cir. 2000) (reversing and remanding on multiple grounds including unexpurgated use of McDonnell Douglas framework in jury instructions).

at hand, no such rote recitation took place: the district court used simple language and avoided the technical phrases that populate the McDonnell Douglas framework — phrases such as "prima facie case" and "presumption." These are the sort of phrases that have prompted expressions of concern in the cases upon which the appellant relies. See, e.g., Cabrera v. Jakabovitz, 24 F.3d 372, 381-82 (2d Cir. 1994); Loeb, 600 F.2d at 1016. Equally as important, the district court provided the jury with a thoughtful, thorough, and easily understandable explanation of the relevant legal concepts. No more was exigible to palliate any realistic prospect of jury confusion.

In an attempt to throw cold water on this reasoning, the appellant points to a compilation of pattern jury instructions. See Draft Pattern Jury Instructions for Cases of Employment Discrimination (Disparate Treatment) for the District Courts of the First Circuit (Mar. 1, 2011) (Pattern Instructions), http://www.rid.uscourts.gov/menu/judges/jurycharges/OtherPJI/1st %20Circuit%20Pattern%20Civil%20Jury%20Instructions%20Employment% 20Discrimination.pdf. She notes that this compilation suggests that it is usually unnecessary for a district court to describe the McDonnell Douglas framework to a jury. See id. at 8 n.1 (suggesting that "there is no reason to instruct on McDonnell Douglas burden shifting; that procedure . . . is likely only to confuse jurors" and adding that use of McDonnell Douglas for that

purpose "can result in error unless great care is taken to conform it to the facts of the case").  This is grasping at straws: a compilation of pattern instructions is merely an informal guide, which "does not in any way curtail" the "wide discretion" enjoyed by a district court to "instruct in language that it deems most likely to ensure effective communication with jurors."  United States v. Gomez, 255 F.3d 31, 39 n.7 (1st Cir. 2001).  Though pattern instructions may be a useful reference point, they are not binding.  See id.; see also Pattern Instructions, preface (cautioning that the pattern instructions are "simply a proposal" and that "[n]either the Court of Appeals nor any District Court within the circuit has in any way approved" their use).  Consequently, declining to follow a pattern instruction in a particular case is not error per se.  See Gomez, 255 F.3d at 39 n.7.

That ends this leg of our journey.  We conclude, without serious question, that the appellant has not shown that the district court abused its discretion by including in its jury instructions a custom-tailored adaptation of the McDonnell Douglas framework.  Read in their entirety, the instructions tasked the jury, in simple and easily understood language, with resolving the overarching issue in the case: whether or not the defendants took adverse employment actions against the appellant based on either a retaliatory or discriminatory animus.

## B.    **The Pretext Claim.**

The appellant's remaining claim of error posits that the district court erred in instructing the jury that, even if the jury found that the appellant had proven the elements of her prima facie case, it would still have to consider whether the defendants' proffered reasons for firing her were legitimate and nondiscriminatory and, if so, whether those reasons were "merely [a] pretext."  Because the appellant never interposed any such objection at trial, see Fed. R. Civ. P. 51(c)(2), our review is for plain error, see Deppe, 509 F.3d at 58; Colón-Millín v. Sears Roebuck de P.R., Inc., 455 F.3d 30, 41 (1st Cir. 2006).

The plain-error rubric is familiar.  Under this rubric, a party advancing an unpreserved claim of error must establish "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  The proponent of plain error bears the burden of persuasion as to each of these four elements.  See United States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017); Cipes v. Mikasa, Inc., 439 F.3d 52, 56 (1st Cir. 2006).

We long have cautioned that "the plain error hurdle is high."  United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989).  Nowhere is this hurdle higher than in instances in which

an appellant relies on a claim of instructional error; in such instances, reversals are hen's-teeth rare.  See United States v. Paniagua-Ramos, 251 F.3d 242, 246 (1st Cir. 2001); Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors, 850 F.2d 803, 809-10 (1st Cir. 1988).  This hard-to-achieve standard makes good sense: timely and specific objections to jury instructions "enable a trial court to correct any . . . mistakes before the jury retires" and, thus, avoid the necessity for a costly retrial.  Jones v. United States, 527 U.S. 373, 387-88 (1999).

Here, it is doubtful whether the district court's use of the pretext language was error at all, let alone clear or obvious error.[3]  In all events, we believe that the most straightforward way to dispose of the appellant's claim of error is to focus on the third element of the plain-error standard: whether the alleged error affected the appellant's substantial rights.  Satisfying this element requires the appellant to show a reasonable probability that, but for the alleged error, the verdict would

---

[3] Federal courts regularly consider pretext in resolving FMLA claims.  See, e.g., Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 70 (1st Cir. 2015); Henry, 686 F.3d at 55-58.  By the same token, the Rhode Island Supreme Court has stated that, once the elements of a prima facie case have been established in a RICRA employment discrimination case, the employer "must offer a legitimate, nondiscriminatory reason for discharging th[e] employee and then the employee must convince the fact-finder that the reason offered by the employer is a pretext for discriminatory animus."  Poulin v. Custom Craft, Inc., 996 A.2d 654, 659 (R.I. 2010) (internal quotation mark omitted).

- 11 -

have been different.  See Bramley, 847 F.3d at 7.  As we explain below, the appellant has not come close to making this showing.

We start with a negative.  The appellant does not contend that it was inappropriate for the jury to consider whether the defendants' articulated reasons for discharging her were pretextual.  Her assignment of error is much more narrowly cabined: she only contends that the jury's consideration of pretext should have taken place as part of its determination about whether she had proven the elements of her prima facie case.

There is a fatal flaw in this contention.  The appellant has not offered any developed argumentation that would lead us to conclude that the outcome of the trial would have been different if the district court had moved the pretext instruction into an earlier portion of the charge.[4]  This dearth of developed argumentation is not surprising: no matter where the pretext instruction was placed within the four corners of the charge, the jury ultimately had to determine whether a discriminatory or retaliatory animus motivated the defendants to fire the appellant.

---

[4] Indeed, the appellant has not even made the trial transcript part of the record on appeal.  See Fed. R. App. P. 10(b); Real v. Hogan, 828 F.2d 58, 60-61 (1st Cir. 1987).  The absence of such a transcript makes it surpassingly difficult to prevail on the sort of nuanced argument that the appellant advances.  See Real, 828 F.2d at 60-61 (explaining that "it is the appellant who must bear the brunt of an insufficient record on appeal").

Whether or not the defendants' articulated reasons for the firing were pretextual was highly relevant to that determination.

In the last analysis, an argument premised on plain error cannot succeed without "some level of certainty and particularity."  Id.  Here, the appellant offers us neither certainty nor particularity.  Given this vacuum, plain error is plainly absent.  The appellant simply has not shown that the outcome of the trial would likely have changed had the district court rearranged the components of the charge.  See Jones, 527 U.S. at 394-95 (stating that "[w]here the effect of an alleged error is so uncertain, a [party] cannot meet his burden of showing that the error actually affected his substantial rights"); Bramley, 847 F.3d at 8 (explaining that guesswork and speculation are insufficient to satisfy an appellant's burden in connection with the third element of plain-error review).  After all, there is no reason to believe that had the deck chairs on the Titanic been rearranged, the ship's voyage would have had a more auspicious ending.

## III.  CONCLUSION

We need go no further.  Since we have concluded that the appellant's claims of instructional error lack force, it follows inexorably that the district court did not abuse its discretion in denying the appellant's motion for a new trial.

**Affirmed.**